IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MAE WEAVER,                                   *
                                              *
                    Plaintiff,                *
                                              *
vs.                                           *         No. 2:13-cv-00048-SWW
                                              *
                                              *
RAY HOBBS, Director of the Arkansas           *
Department of Correction, and DANNY           *
BURL, Individually and as Agency              *
Representative,                               *
                                              *
                    Defendants.               *

<u>OPINION AND ORDER</u>

        Mae Weaver, a black female and former employee of the Arkansas Department of

Correction (ADC), brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 against Ray

Hobbs, Director of the ADC, and Danny Burl, Warden of the East Arkansas Regional

Unit of the ADC, alleging employment discrimination.  Weaver claims that her

Fourteenth Amendment right to equal protection was violated when the ADC terminated

her employment after she used all available leave under the Family and Medical Leave

Act (FMLA) and did not return to work, and that an alleged on-the-job injury was caused

by acts that violated her Fourteenth Amendment right to substantive due process.

        The matter is before the Court on motion [doc.#'s 16, 21] of defendants to dismiss

Weaver's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).[1]  Weaver has

_____

        [1] As "[i]t is well-established that an amended complaint supercedes an original complaint
and renders the original complaint without legal effect," *In re Wireless Tel. Fed. Cost Recovery
Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005), Weaver's First Amended Complaint is the sole

responded in opposition to defendants' motion.  For the reason that follow, the Court

grants defendants' motion to dismiss Weaver's First Amended Complaint.

## I.

In her First Amended Complaint, Weaver alleges that she was assigned to work in

a guard tower and that her job duties required her to lift weapons from the ground to the

top of the tower.  She  alleges that she injured her shoulder when she was required to lift

up to the guard tower a basket of weapons that weighed more than ten pounds–a task for

which she had not been trained–and that this injury necessitated that she take FMLA

leave.

Weaver alleges that her employment was terminated and contract rights thereby

interfered with when she did not return to work after using all the FMLA leave available

to her.  She alleges she was terminated because of an unidentified policy that she claims

had a disparate impact on black and female employees of the ADC and that unnamed

white employees of the ADC were treated more favorably thereby violating her

Fourteenth Amendment right to equal protection.  She also alleges that her work-place

injury was the result of a task improperly assigned to her, and that this task assignment

violated her Fourteenth Amendment right to substantive due process.

## II.

Defendants move to dismiss Weaver's First Amended Complaint on the following

---

basis of this action.

grounds: (1) Weaver's 42 U.S.C. §§ 1981 and 1983 claims against defendants in their official capacities are barred by the Eleventh Amendment; (2) the First Amended Complaint fails to state an equal protection claim against the defendants because it relies upon a formulaic recitation and provides no facts that would tend to demonstrate that the defendants treated similarly situated individuals differently; and (3) the First Amended Complaint fails to state a substantive due process claim because, taking even the conclusory allegations as facts, the work place injury and attendant circumstances that are alleged do not shock the conscience.

## A.

In reviewing a motion to dismiss, the Court must accept as true all factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Nor does a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at

556). A well-pleaded complaint may proceed even if it appears that actual proof of those

facts is improbable and that recovery is very remote and unlikely. *Twombly*, 550 U.S. at

556. A complaint cannot, however, simply leave open the possibility that a plaintiff

might later establish some set of undisclosed facts to support recovery. *Id.* at 561.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

### B.

### 1.

The Court first addresses Weaver's claims against Hobbs and Burl in their official

capacities. "A suit against a public employee in his or her official capacity is merely a

suit against the public employer." *Campbell v. State of Iowa, Third Judicial Dist. Dept.

of Correctional Services*, 702 F.3d 1140, 1141 (8th Cir. 2013) (citation omitted). See also

*Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) ("A suit against state

employees in their official capacities is the functional equivalent of a suit against the

State.").[2] As this Court has recently noted, with the exception of claims for prospective

injunctive relief, see *Monroe v. Arkansas State University,* 495 F.3d 591, 594 (8th Cir.

---

[2] "The ADC is a state agency that is 'the sole creation of the state' and has 'no separate identity' from the state and cannot be stripped of its official character." *Rucker v. Banks*, No. 5:12-cv-00088, 2013 WL 1005649, *3 (E.D. Ark. March 13, 2013) (quoting *Click v. Henderson*, 855 F.2d 536, 540 (8th Cir. 1988)).

2007), sovereign immunity of the States recognized in the Eleventh Amendment bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the states' immunity or a state has consented to suit or waived its immunity. *Collins v. Arkansas Bd. of Embalmers & Funeral Directors*, No. 3:12-cv-00123-SWW, 2013 WL 2405302, *5 (E.D. Ark. May 31, 2013) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 74 (1996); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Edleman v. Jordan,* 415 U.S. 651, 663 (1974)). The State of Arkansas has not waived its immunity, nor did Congress abrogate that immunity when it enacted 42 U.S.C. §§ 1981 and 1983. *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005); *Burk v. Beene*, 948 F.2d 489, 492-93 (8th Cir. 1991)). Thus, sovereign immunity bars Weaver's claims against Hobbs and Burl in their official capacities.[3]

### 2.

The Court now turns to Weaver's § 1983 claim for equal protection violation under the Fourteenth Amendment. Weaver alleges that she "was treated differently on the basis of her race and sex ... because other white employees were not terminated or

---

[3] Weaver states that she "seeks reinstatement to her position with the ADC and other equitable relief" and that "such claim and relief is not barred by the doctrine of sovereign immunity." Although reinstatement is among those forms of prospective equitable relief that a plaintiff may seek from a state official despite the Eleventh Amendment, *Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999), Weaver, as will be seen, fails to plead enough facts in support of any of her claims to state a claim to relief that is plausible on its face. It thus follows, and the Court so finds, that Weaver has not pled enough facts that would demonstrate she is eligible for reinstatement or other equitable relief.

punished in the same manner for protesting job assignments consistent with training."
First Am. Compl. ¶ 31.

"[T]he Equal Protection Clause requires that the government treat such similarly situated persons alike." *Hager v. Arkansas Dept. of Health*, — F.3d —, 2013 WL 6038991, *2 (8th Cir. Nov. 14, 2013) (citations omitted).  Absent evidence of direct discrimination, courts apply the *McDonnell Douglas* burden-shifting analysis to claims of employment discrimination under the Equal Protection Clause.  *Id*.  "Under *McDonnell Douglas*, a prima facie case of discrimination requires that a plaintiff prove: '(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.'" *Id*. (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

Weaver's First Amended Complaint does not state a plausible equal protection claim based on race or gender because it alleges only generally that other unidentified white (and, presumably, male) employees were given different treatment.  As noted by defendants, Weaver does not allege any fact suggesting that either defendant had any role in decisions pertaining to the other employees, she does not identify allegedly comparable employees by name, position, or job duty, does not identify the circumstances under which they were disciplined differently, does not describe the time frame within which the events occurred, and does not name the decision makers involved.  Weaver's allegation that she is the victim of race and gender discrimination fails to give defendants fair notice of the claim and the grounds upon which such alleged discrimination rests, and

her conclusory assertion that she was discharged under circumstances similarly situated

white employees were not "imports legal language couched as a factual allegation and

fails to raise a right to relief above the speculative level." *Hager*, — F.3d —, 2013 WL

6038991, *4 (citing *Twombly*, 550 U.S. at 555).

3.

In support of her § 1981 claim, which the Court construes as being brought under §

1983, see *Lockridge v. Bd. of Trustees of Univ. of Ark.*, 315 F.3d 1005, 1007 (8th Cir.

2003) (en banc) (a claim alleging a violation of § 1981 may not be brought directly

against a state actor, but must be brought under § 1983), Weaver asserts that "each

defendant participated in a scheme to interfere with Weaver's right of employment on the

basis of her race," that "each defendant conspired to interfere with Weaver's contract

rights," and that "each defendant acted deliberately and intentionally to carry out a

scheme to harm Weaver."  First Am. Compl. ¶¶ 39, 41, 44.  Weaver's § 1981 claim

appears to be based on the same allegations underlying her § 1983 equal protection claim

(at least insofar as it concerns alleged race discrimination).[4]  Accordingly, Weaver's §

1981 claim fails for the same reason as does her § 1983 equal protection claim.  But to the

extent Weaver's § 1981 claim is based on allegations separate and distinct from those

---

[4] One way for a plaintiff to show a defendant's intent to discriminate under § 1981 is to
show that he or she was treated differently from similarly situated nonmembers of the protected
class.  *Harris v. Hayes*, 452 F.3d 714, 718 (8th Cir. 2006) (citation omitted).  See also *Gratz v.
Bollinger*, 539 U.S. 244, 276 n. 23 (2003) ("[P]urposeful discrimination that violates the Equal
Protection Clause of the Fourteenth Amendment will also violate § 1981.").

underlying her § 1983 equal protection claim, Weaver's conclusory assertions that defendants schemed and conspired to interfere with her employment and contract rights on the basis of her race and acted deliberately and intentionally to carry out a scheme to harm her still fails to give defendants fair notice of the claim and the grounds upon which such alleged discrimination rests and "imports legal language couched as a factual allegation and fails to raise a right to relief above the speculative level." *Hager*, — F.3d —, 2013 WL 6038991, *4 (citing *Twombly*, 550 U.S. at 555).

### 4.

Finally, the Court addresses Weaver's § 1983 claim for substantive due process violation under the Fourteenth Amendment. "The Due Process Clause does not require that municipal employees be guaranteed certain minimal levels of safety and security in the workplace*." Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992)). "And 'nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Id*. (quoting *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 195 (1989)). Substantive due process does, however, require a state to protect individuals that are in its custody and the state also "owes a duty to protect individuals if it created the danger to which the individuals are subjected." *Id*. (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005)).

Weaver apparently relies on the state-created-danger theory of liability in support of her substantive due process claim. To succeed on such a theory, Weaver must prove

(1) that she was a member of "a limited, precisely definable group," (2) that the municipality's conduct put her at a "significant risk of serious, immediate, and proximate harm," (3) that the risk was "obvious or known" to the municipality, (4) that the municipality "acted recklessly in conscious disregard of the risk," and (5) that in total, the municipality's conduct "shocks the conscience." *Id*. at 891.

Concerning the last factor–conduct that shocks the conscience–the Eighth Circuit in *Fields* noted that

> [t]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault. Actionable substantive due process claims involve a level of abuse of power so brutal and offensive that they do not comport with traditional ideas of fair play and decency. Under the state-created-danger theory, negligence and gross negligence cannot support a § 1983 claim alleging a violation of substantive due process rights. And proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold.

*Id*. (internal quotations, citations and brackets omitted).

The Court finds that Weaver has failed to allege conscience-shocking conduct on the part of defendants.[5]  Weaver acknowledges that hauling weapons up to the guard tower was part of her job with the ADC and her remedy for the on-the-job injury she

---

[5] The Court thus need not address the other factors relevant to a state-created-danger theory of liability.  See *id*. ("Because we conclude that, even after viewing the facts in the light most favorable to Fields, the Miller County individual defendants' conduct was not conscience shocking and therefore did not violate Fields's substantive due process rights, we will focus our analysis on that element and will not address the other four *Hart* factors.").

claims she suffered was to file a workers' compensation claim, which she did.[6]  "The ordinary incidents of the employment relationship, and the jobs that public employees are hired to do, are not normally subject to substantive due process analysis," *Tucker v. City of Hot Springs, Arkansas*, 204 F.3d 783 (8th Cir. 2000) (per curiam), and nothing in Weaver's First Amended Complaint alleges a substantive due process claim that is plausible on its face.  *Cf. id.* (city's action of requiring an employee to enter and inspect buildings that were dangerous, unsanitary, and unhealthy, although special safety equipment had not yet arrived, did not violate substantive due process, because the employee was not in a custodial setting, he was not ordered to enter the building under threat of losing his job, and inspecting buildings in question was part of his regular task; Court noted that "[i]f the conditions of his employment harmed him, his remedy would be under the state workers' compensation statute.").

III.

For the foregoing reasons, the Court grants defendants' motion [doc.#'s 16, 21] to dismiss Weaver's First Amended Complaint [doc.#15].  The Court will enter judgment accordingly.

IT IS SO ORDERED this 17th day of December 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[6] The Arkansas Court of Appeals affirmed the judgment of the Arkansas Workers' Compensation Commission denying Weaver's claim for benefits.  *Weaver v. Arkansas Dept. of Correction*, 2013 Ark. App. 158.